**UNPUBLISHED**

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

RICHARD CHARLES DALEY,

*Defendant-Appellant.*

No. 03-4760

Appeal from the United States District Court
for the Eastern District of Virginia, at Richmond.
James C. Cacheris, Senior District Judge.
(CR-02-251)

Submitted: July 21, 2004

Decided: August 19, 2004

Before WIDENER, KING, and DUNCAN, Circuit Judges.

---

Affirmed in part, reversed in part, and remanded by unpublished per curiam opinion.

---

## COUNSEL

Gary H. Smith, Alexandria, Virginia, for Appellant. Paul J. McNulty, United States Attorney, Michael J. Elston, Michael C. Wallace, Sr., Assistant United States Attorneys, Richmond, Virginia, for Appellee.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

**OPINION**

PER CURIAM:

Richard Charles Daley ("Daley") appeals his convictions and sentences following a jury trial for two counts of conspiracy to distribute cocaine base, in violation of 21 U.S.C. § 846 (2000) (Counts One and Three), two counts of possession with intent to distribute cocaine base, in violation of 21 U.S.C. § 841 (2000) (Counts Two and Four), and one count of possession of a firearm in furtherance of a drug trafficking offense, in violation of 18 U.S.C. § 924(c) (2000) (Count Five). He was sentenced to 295 months' imprisonment, five years of supervised release, a $500 mandatory special assessment, and forfeiture of property and proceeds obtained as a result of the offenses of conviction. On appeal, Daley alleges there is insufficient evidence to support his convictions. For the following reasons, we affirm in part, reverse in part, and remand for resentencing.

Daley's convictions stem from the following events. FBI agents in conjunction with local law enforcement, using a confidential informant known as "Rob," arranged to purchase one kilogram of cocaine from Roderick White. White called Richard Daley's brother, Devon Daley ("Devon"), with whom he had done drug deals in the past, and inquired about purchasing the drugs. When Devon agreed, White went to Devon's apartment to retrieve the drugs. When White arrived at the apartment to meet with Devon, Devon directed him to Daley, telling White that Daley was the one who could "hook [him] up" with the requested amount of cocaine. Daley asked White how well he knew "Rob." After some discussion, Daley agreed to consummate the drug transaction, and he left with White in White's truck to meet "Rob" at a prearranged location. While en route to this location, Daley, suspecting police surveillance, changed the meeting place in an effort to elude law enforcement. While White and Daley were waiting at the new location, law enforcement officers arrested them.

Some officers testified they saw Daley make a tugging or furtive motion as they approached the vehicle and suspected he had a gun. A search of the vehicle yielded a loaded .38 caliber revolver underneath the passenger seat where Daley had been seated and nearly one kilogram of cocaine base. White testified he was unaware of the fire-

arm's presence and had never had a firearm in his truck. White agreed to cooperate with law enforcement and took them to the apartment where he had met Daley. A search of the apartment yielded a large amount of drugs, drug paraphernalia, and firearms.

In determining whether sufficient evidence supports a conviction, the appropriate inquiry is whether, taking the evidence in the light most favorable to the government, any reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt. *Glasser v. United States*, 315 U.S. 60, 80 (1942). We "must consider circumstantial as well as direct evidence, and allow the Government the benefit of all reasonable inferences from the facts proven to those sought to be established." *United States v. Tresvant*, 677 F.2d 1018, 1021 (4th Cir. 1982). The jury verdict must be upheld if there is substantial evidence to support the verdict. *Id.*; *United States v. Murphy*, 35 F.3d 143, 148 (4th Cir. 1994). A defendant challenging the sufficiency of the evidence faces a heavy burden. *United States v. Beidler*, 110 F.3d 1064, 1067 (4th Cir. 1997). "[A]n appellate court's reversal of a conviction on grounds of insufficiency of evidence should be 'confined to cases where the prosecution's failure is clear.'" *United States v. Jones*, 735 F.2d 785, 791 (4th Cir. 1984) (quoting *Burks v. United States*, 437 U.S. 1, 17 (1978)).

First, we find there is insufficient evidence to support Daley's § 924(c)(1) conviction. In order to establish a violation of § 924(c), the Government must prove beyond a reasonable doubt that: (1) the defendant used or carried a firearm; and (2) the use or carrying was during and in relation to a drug trafficking crime. *United States v. Sloley*, 19 F.3d 149, 152 (4th Cir. 1994) (citing *Smith v. United States*, 508 U.S. 223, 227-28 (1993)). Possession my be actual or constructive. *United States v. Rusher*, 966 F.2d 868, 878 (4th Cir. 1992). Constructive possession is established if it is shown "that the defendant exercised, or had the power to exercise, dominion and control over the item." *Id.* The possession can be shared with others. *United States v. Burgos*, 94 F.3d 849, 873 (4th Cir. 1996). However, mere presence at the location where contraband is found is insufficient to establish possession. *United States v. Samad*, 754 F.2d 1091, 1096 (4th Cir. 1984). "There must be some action, some word, or some conduct that links the individual to the [contraband items] and indicates that he had some stake in them, some power over them. There must be something

to prove that the individual was not merely an incidental bystander."
*United States v. Pardo*, 636 F.2d 535, 549 (D.C. Cir. 1980).

The facts of this case are virtually identical to those in *United States v. Blue*, 957 F.2d 106 (4th Cir. 1992). In that case, we held that an officer's testimony that as he approached the suspect vehicle, he observed Blue's shoulder dip as if he were reaching underneath the passenger seat where he was seated, and the subsequent discovery of a firearm under that seat, did not alone justify a finding of constructive possession. *Blue*, 957 F.2d at 107-08. We further noted that no fingerprints or any other physical evidence linked Blue to the firearm, the Government introduced no evidence demonstrating Blue's ownership of the gun or testimony that he had been seen with the gun, and the vehicle in which Blue was riding was not his own nor was there any evidence he had ever been in the vehicle before. *Id.*

Here, as in *Blue*, officers testified they saw Daley make a tugging or furtive motion as they approached the vehicle. However, they conceded they could not see Daley's hands and what, if anything, he might have had in them. Daley did not own the vehicle in which the firearm was found, nor is there any evidence he had ever been in the vehicle before. Moreover, there is no evidence Daley was ever seen with the firearm, nor is there any physical evidence such as fingerprints linking him to the firearm. Thus, we find the evidence of a tugging or furtive motion and the subsequent recovery of the firearm underneath the seat where Daley was sitting insufficient by itself to sustain the § 924(c)(1) conviction and reverse that conviction.

Daley next argues there was insufficient evidence to support his § 841(a)(1) (2000) convictions for two counts of possession with intent to distribute cocaine base. Count Two deals with the cocaine base found inside White's truck, while Count Four deals with the cocaine base found inside the apartment. In order to establish a violation of § 841(a)(1), the Government must prove beyond a reasonable doubt that the defendant: (1) knowingly; (2) possessed the controlled substance; (3) with intent to distribute it. *Burgos*, 94 F.3d at 873.

We find sufficient evidence supports Daley's conviction on Count Two. The jury deemed White's testimony credible, and we will not review that determination on appeal. *See United States v. Saunders*,

886 F.2d 56, 60 (4th Cir. 1989). With regard to Daley's knowing possession of the cocaine base, White testified that when he went to the apartment intending to do business with Devon, he was directed to Daley, who ultimately agreed to take part in the transaction. Moreover, White testified he observed Daley take the cocaine base from the apartment and place it behind the seat of White's truck, where it was later found. We find this is sufficient evidence that Daley knowingly possessed the cocaine base.

Intent to distribute may be inferred from a drug quantity larger than needed for personal use. *United States v. Wright*, 991 F.2d 1182, 1187 (4th Cir. 1993); *United States v. Roberts*, 881 F.2d 95, 99 (4th Cir. 1989). Intent to distribute may also be proven by the quantity and packaging of drugs in such a way as to distinguish it from drugs intended for personal use. *United States v. Lamarr*, 75 F.3d 964, 973 (4th Cir. 1996) (finding possession of 5.72 grams of cocaine base, combined with other circumstantial evidence, sufficient to support jury's inference of intent to distribute). Here, nearly one kilogram of cocaine base was recovered from White's truck. Thus, we find sufficient evidence supports a finding of Daley's intent to distribute. Accordingly, we find sufficient evidence support's Daley's conviction on Count Two and affirm that conviction.

Count Four deals with the drugs recovered from a subsequent search of the apartment. The Government proceeded on a theory of constructive possession. We find there is only speculative evidence that Daley resided in the apartment. Marquetta Jackson testified she rented the apartment on behalf of two of Daley's brothers. Moreover, several residents of the apartment complex testified they did not know whether Daley lived there, instead only testifying they saw him there "a couple of times," "a little bit," "one or two times," and "sometimes." The only evidence the Government produced linking Daley to the apartment was a blueprint for a house Daley intended to build. Although there was testimony that an airline ticket to Jamaica in Daley's name was found in the apartment, it was not introduced into evidence. Finally, none of Daley's personal belongings, such as clothing, were found linking him to the apartment. We find such speculative evidence is insufficient to justify a finding of constructive possession of the drugs found at the apartment. Thus, we find insuffi-

cient evidence supports Daley's conviction on Count Four and reverse that conviction.

Finally, Daley argues insufficient evidence supports his § 846 convictions for conspiracy to distribute cocaine base. Count One deals with the conspiracy between Daley and White, while Count Three deals with the conspiracy between Daley and Devon, and possibly others. To prove conspiracy to distribute a controlled substance, the Government must establish that: (1) two or more persons agreed to distribute the substance; (2) the defendant knew of the conspiracy; and (3) the defendant knowingly and voluntarily became part of the conspiracy. *Burgos*, 94 F.3d at 857.

With regard to Count One, an agreement to distribute cocaine base can be inferred between Daley and White. After White initially spoke with Devon on the phone, it can be inferred that Devon discussed the deal with Daley. This is so because when White arrived at the apartment, Devon immediately directed him to Daley, whom he said could "hook [him] up" with that large amount of drugs. Moreover, when White spoke to Daley, Daley immediately asked him questions regarding how well he knew "Rob" before agreeing to enter into the transaction by stating "[w]e can go do it." Finally, Daley accompanied White to the drug transaction, and even changed the prearranged meeting location in an apparent effort to elude law enforcement. We find this evidence supports a finding that Daley entered into an agreement with White to distribute cocaine base, that Daley knew of the conspiracy, and that he knowingly and voluntarily became part of it. Accordingly, we find sufficient evidence supports his conviction on Count One and affirm.

With regard to Count Three, an agreement also can be inferred between Daley and Devon. Most of the evidence supporting Daley's conviction on Count One also supports his conviction on Count Three. It could reasonably be inferred that Devon and Daley spoke before White arrived at the apartment, agreeing that Daley would provide the drugs to "Rob." This is so because Devon immediately directed White to Daley, and there is no evidence that Daley was surprised by White's request for the drugs. We find this establishes at least an implicit agreement between Devon, Daley, and possibly others, to distribute cocaine base. This same evidence further establishes

Daley's knowledge of the conspiracy and that he knowingly and voluntarily became part of it. Thus, we find sufficient evidence supports Daley's conviction on Count Three and affirm that conviction.

For these reasons, we find sufficient evidence supports Daley's convictions on Counts One, Two, and Three. Accordingly, we affirm those convictions and sentences. However, we find there is insufficient evidence to support Daley's convictions on Counts Four and Five. Thus, we reverse those convictions and remand to the district court for resentencing. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

*AFFIRMED IN PART,*
*REVERSED IN PART, AND REMANDED*