**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

**No. 12-4757**

_____

UNITED STATES OF AMERICA,

              Plaintiff – Appellee,

     v.

ANTHONY DEMPS KING, JR.,

              Defendant – Appellant.

_____

Appeal from the United States District Court for the Eastern
District of North Carolina, at Raleigh.   James C. Dever, III,
Chief District Judge.  (5:11-cr-00191-D-1)

_____

Submitted:  July 8, 2013                Decided:  August 5, 2013

_____

Before KING and DIAZ, Circuit Judges, and HAMILTON, Senior
Circuit Judge.

_____

Affirmed by unpublished per curiam opinion.

_____

Mark R. Sigmon, GRAEBE HANNA & SULLIVAN, PLLC, Raleigh, North
Carolina, for Appellant.   Thomas G. Walker, United States
Attorney, Jennifer P. May-Parker, Assistant United States
Attorney, Joshua L. Rogers, Assistant United States Attorney,
OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina,
for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Anthony Demps King, Jr., appeals his conviction for knowingly possessing a firearm after having been convicted of a felony in violation of 18 U.S.C. § 922(g)(1). King claims the evidence is insufficient to support the jury's verdict. For the reasons that follow, we affirm.

I.

A.

In the early morning hours of February 9, 2011, the Fayetteville, North Carolina, Police Department received a call for service regarding shots fired in the parking lot at a local club.[1] Officers were told that the suspect vehicle was a black sport utility vehicle, possibly a Ford Expedition, with one headlight out. While en route to the call, Officer John Carro observed a vehicle matching that description with one headlight out in the parking lot of a gas station. Carro continued traveling down the road so as to not alert the occupants of the vehicle that he had noticed them. Carro radioed for backup before he turned around to approach the vehicle. Detective

---

[1] Because the district court returned a guilty verdict, we review the evidence in the light most favorable to the Government. See United States v. Burgos, 94 F.3d 849, 862-63 (4th Cir. 1996) (en banc).

2

Michael Ballard and Officer Jerrod Belanger responded to the call for backup. The vehicle left the gas station and Carro fell in behind it before initiating a traffic stop.

Carro opened, but stayed behind, the door of his patrol car. He used the car's public announcement system to order the occupants out of the vehicle. The driver indicated that the door of the vehicle would not open. Carro repeated his command, but none of the four occupants complied.

By that time, Sergeant Dale Autry, II, arrived on scene and, with Ballard and Belanger, approached the passenger side of the vehicle. Belanger swung wide to the right to obtain a better view of the inside of the vehicle. Both the front and rear passenger windows were rolled down. Belanger saw King reclined in the front passenger seat, and looking back into the vehicle. Belanger ordered King to keep his hands where he could see them. Ballard opened the rear passenger door and ordered the right-rear passenger out and onto the ground. Autry then approached the front passenger seat and ordered King out of the vehicle. Autry was able to grab King's right hand but was unable to secure King's left hand.

Before Autry was able to secure King, Belanger saw King retrieve a firearm from his lap, grab the firearm by the barrel, and reach backward between the two front seats. Autry saw some type of object in King's left hand and also saw King place

3

something underneath the left rear seat of the vehicle, but was not sure what the object was. Ballard, who was attempting to secure the right rear passenger on the ground next to the vehicle, saw King's left arm between the two front seats, but saw nothing in King's left hand. Ballard grabbed King's left arm and Autry then removed King from the vehicle.

Ballard walked around to the driver's side of the vehicle and looked at the backseat floorboard where he had observed King reach. He discovered a .38 caliber Smith & Wesson revolver on the floorboard just in front of the left rear passenger seat of the vehicle. Autry asked for a crime scene technician to respond to their location to test all of the occupants' hands for gunshot residue (GSR). Three of the four occupants in the vehicle were tested for GSR on scene and all three tested negative. King, however, resisted any attempt to test him on scene, but he was ultimately tested at the police station, where officers found gunshot residue on his hands.

B.

The grand jury returned a two-count indictment alleging that King possessed a firearm and that he possessed ammunition,

4

in each instance after having been convicted of a felony.[2]   After a four-day trial, the jury acquitted King on the possession of ammunition by a felon charge but convicted him of possession of a firearm by a felon.  This appeal followed.

II.

A.

The sole issue before us is whether the district court erred in denying King's motion for judgment of acquittal.  King contends that the evidence presented at trial was insufficient to allow the jury to find him guilty beyond a reasonable doubt. This presents a question of law which we review de novo.  United States v. Alerre, 430 F.3d 681, 693 (4th Cir. 2005).

King's conviction can stand only if "there is substantial evidence, taking the view most favorable to the Government," to support it.  Glasser v. United States, 315 U.S. 60, 80 (1942). "[S]ubstantial evidence consists of evidence that a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt."  United States v. King, 628 F.3d 693, 700 (4th Cir. 2011)(internal quotations omitted).  We can reverse a conviction

---

[2] The ammunition charge stems from an event unrelated to the one before us.

based upon insufficiency of the evidence only when the "prosecution's failure is clear." United States v. Moye, 454 F.3d 390, 394 (4th Cir. 2006) (en banc) (citing United States v. Jones, 735 F.2d 785, 791 (4th Cir. 1984)). We must "also assume that the jury resolved all contradictions in the testimony in favor of the government." Id. (citing United States v. Sun, 278 F.3d 302, 313 (4th Cir. 2002)). Lastly, when the evidence tends to support differing reasonable interpretations, the determination of which interpretation to accept is properly within the purview of the jury. United States v. Wilson, 118 F.3d 228, 234 (4th Cir. 1997).

B.

King's sole argument is that there was insufficient evidence for the jury to find that he possessed the firearm. He contends that the officer who observed the firearm in King's hand--Officer Belanger--was too far away and had an obstructed view of the car. Additionally, King relies on the fact that the officer who was closest to him--Detective Ballard--saw nothing in King's hand and that he believed King was reaching for something in the backseat floorboard.

King also contends that the results of the GSR test showing the presence of gunshot residue on King's hands could have been produced by transfer either (1) from the officers who arrested

6

him, (2) from the patrol car used to transport him to the police station, or (3) from the holding cell in which he was placed upon arriving at the police station.

The government responds that the jury could reasonably conclude that King actually possessed the firearm by holding it in his left hand and placing it on the backseat floorboard. First, says the government, Officer Belanger observed King holding the firearm by the barrel, reaching through the center console area of the car, and placing the firearm in the backseat floorboard. Second, Sergeant Autry saw King with "something in his left hand" and that King was "putting something underneath the back seat . . . an object of some sort." Third, Detective Ballard observed a firearm in the backseat floorboard where King was reaching after King was secured by Sergeant Autry and Officer Belanger. Finally, the GSR test showed that King had gun shot residue on his hands.

We agree with the government. The totality of the evidence the government produced at trial (which we have summarized above), viewed in the light most favorable to the government, was more than sufficient to support the jury's verdict. The jury was also entitled to reject King's arguments regarding the alleged contradictions in the evidence. Sun, 278 F.3d at 313.

King relies upon United States v. Blue, 957 F.2d 106 (4th Cir. 1992), in arguing that his conviction should not stand. In

7

Blue, an officer stopped a vehicle for an alleged seat belt violation. Id. at 107. As the officer approached the vehicle, he observed Blue--a passenger--"dip" his shoulder as if he were reaching under his seat. Id. The officer obtained consent to search the vehicle and found a firearm underneath the passenger seat. Id. Blue was charged with possession of a firearm by felon. Id. The government proceeded on a constructive possession theory and relied solely upon two pieces of evidence: (1) Blue "dipping" his shoulder as the officer approached the vehicle; and (2) the officer's subsequent discovery of a firearm under the passenger seat. Id. at 107-08.

We reversed Blue's conviction, ruling that in order "[t]o uphold a finding of constructive possession, . . . more evidence of dominion and control" was required. Id. at 108. We concluded that "the government introduced no evidence demonstrating that Blue owned the gun or testimony that Blue had been seen with the gun." Id. We also noted that the government failed to show "that Blue had ever been in [the car in which the gun was found] before." Id.

King's reliance upon Blue is misplaced for the simple reason that Officer Belanger actually saw King with a firearm in his hand. Additionally, the evidence at trial showed that King frequently used the vehicle in which police found the gun, as it

8

belonged to King's mother.  Blue, therefore, is of no help to King.

We affirm the district court's judgment.  We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before this court and argument would not aid the decisional process.

AFFIRMED